Good morning. May it please the Court, Norm Watkins on behalf of the appellants. Hopefully this is an unusual case. The facts are rather compelling. The appellants were homeowners during the Northridge earthquake. Their home was damaged. They were insured by ALLSTATE at the time. They filed a claim. The claim was ultimately assigned by ALLSTATE to a company by the name of Shadowbrook. Shadowbrook's proprietor or head person was a person by the name of LeAndre Davis. A report was issued by ALLSTATE to the homeowners purporting to Mr. Watkins, I think we understand that there were some squirrely things with the report. The main problem I've got, the main problem I have with this case is if you, in fact, assume all of the facts in your favor, in the conclusion in your favor, at the end of the day, where is there a triable issue of fact about what difference any of it made? Put differently, where is there a triable issue of fact that on account of any of the deficiencies in the Shadowbrook report that there is damage that was not paid by ALLSTATE? The report is tied in with what occurred after the report, and that is the homeowners ultimately retained Mr. Davis to be the general contractor to perform the repairs set forth in the report. Now, the report itself, based upon accepting our presentation, the report itself was woefully inadequate. The report did not ---- One of the problems, of course, is that that's all that's said about it. In your expert declarations, the statements as best I can divine are just that it was inadequate. Well, I think the expert declaration sets, or the reports of the experts set forth one central failing, and that is in the aftermath of the earthquake, the City of Los Angeles learned, because of the damage repairs, that the sheer strength that had hitherto been assumed to exist for frame stucco structures was inaccurate, and that a memorandum was issued to engineer licensed individuals saying, in essence, that if you come across a home that has X percentage of distress in walls, I think it was 10%, then you must assume that the entire sheer values for that wall, that structure, however it comes together from an engineering perspective, has been compromised, and you have to re-engineer that structure when you're doing the repairs. There's nothing evidencing that that was ever considered, and understandably so, because Mr. Davis and his cohorts wouldn't be privy to any of this. They weren't licensed. Well, that's not entirely true. The engineer was. There was an engineer. I've been through a number of these cases. This is one of the rare cases where an engineer did stamp this report. We don't know what his level of involvement was, but what we do know is that the report itself makes no accommodation for this significant issue, and couple that with the observations of our expert that the house is presently in significant distress after repairs because of out-of-plumb doors, out-of-plumb windows, cracking, and so forth. The suggestion is, and this is what the expert said, the suggestion is that the repairs, in fact, were wasted because the sheer strength of the structure was never addressed when the skin was off. The, again, the difficulty is the specificity of the evidence that's been offered and whether it is enough to survive a summary judgment. I mean, I've gone through the Sjobring Declaration. He expresses an opinion that additional amounts are owing to repair the earthquake damage are somewhere in the neighborhood of $140,000. The repair work should be redone. He says the structural issues, such as sheer paneling, weren't properly addressed. Well, that's just purely conclusory in its entirety, and so I don't see anything specific or supporting that conclusion. Randall's 1999 report indicates that there's some, well, I don't, it doesn't say anything, basically. So you get into Sjobring's
judges: Rymer, Graber, Molloy